IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

REBECCA DAVISON,

        Plaintiff,

vs.                                                                CASE NO. 1:13-cv-176-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability insurance benefits (DIB) and disabled widow's benefits (DWB).  (Doc. 1.)  The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  (Docs. 9, 17, 19.)  For the reasons discussed below,  the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed for DIB and DWB under Title II of the Act on February 23, 2010, alleging disability since August 15, 1997 due to, among other conditions, lupus.  (R. 154-55, 162.)  Plaintiff's date last insured for DIB purposes is 1998.  (R. 41.)  The prescribed period for her DWB claim is June 15, 2004 through June 30, 2011.[1]  (R. 158.)  Her applications were denied initially and upon reconsideration.  (R. 90-96.)

---

[1]Pursuant to 20 C.F.R. § 404.335, the widow of a fully-insured individual is entitled to benefits if she establishes that she is at least 50, but less than 60 years of age, and is disabled.  The widow must prove that her "disability started not later than 7 years after the insured died or 7 years after [she was] last entitled to . . . widow's or widower's benefits based on a disability, whichever occurred last."  20 C.F.R. § 404.335(c)(1).  The parties do not dispute that the prescribed period for DWB benefits began on June 15, 2004, the date Plaintiff's husband died, and ended June 30, 2011.

Plaintiff's administrative hearing was conducted before an Administrative Law Judge ("ALJ") on October 14, 2011.  (R. 52-86.)  On December 21, 2011, the ALJ issued a decision finding that Plaintiff was not disabled.   (R. 39-47.)  The Appeals Council denied review.  (R. 1-7.)   Plaintiff filed the instant complaint on September 11, 2013, and raises one issue on appeal: whether the ALJ made an improper credibility assessment that is contrary to the Eleventh Circuit's pain standard.  (Docs. 1, 17.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5]

However, the district court will reverse the Commissioner's decision on plenary review if

the decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment that can be

expected to result in death, or has lasted or can be expected to last for a continuous

period of not less than twelve months.[7] The impairment must be severe, making Plaintiff

unable to do her previous work, or any other substantial gainful activity which exists in

the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a

claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]    However, the ALJ should

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
 In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  <u>SUMMARY OF THE RECORD</u>

#### A.  <u>Medical Records</u>

Plaintiff spend a night in the hospital in February 2007 after complaining of abdominal pain, rectal bleeding, and vomiting blood.  She reported that the night before she drank several glasses of wine at a bar, and a friend who was with her was

---

[18] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] <u>Walker</u>, 826 F.2d at 1003.

[20] <u>Wolfe</u>, 86 F.3d at 1077-78.

[21] *See id*.

experiencing the same symptoms.   Her symptoms resolved during her stay, and she was diagnosed on discharge with "gastritis, probably secondary to alcohol use."  (R. 235.)

On February 25, 2008, Plaintiff saw cardiologist Dr. Abdur Rahim, complaining of pain under her right arm that felt like a muscle pull and tiredness.  Her only medications were Synthroid 0.112 mg daily and a baby aspirin.  Dr. Rahim's diagnostic impression was right arm pain, probably musculoskeletal; mitral valve prolapse with mild mitral regurgitation; history of hypothyroidism; and generalized fatigue.  Dr. Rahim continued with symptomatic treatment and recommended re-evaluation in six months.  (R. 251.)

Plaintiff's primary care physician was Douglas Wert, M.D.  (R. 255-59.)  On February 2, 2009, Plaintiff saw Dr. Wert and complained of headaches "at times," requesting Fioricet.  Dr. Wert noted a history of tension headaches and discoid lupus. He referred Plaintiff to a rheumatologist and neurologist.  (R. 258.)  On February 9, 2009, Plaintiff was a "no-show" for her scheduled appointment.  (R. 257.)  On July 29, 2009, Plaintiff saw Dr. Wert, this time with no complaints.  She denied chest pain or shortness of breath.  He again noted a history of tension headaches and discoid lupus and referred Plaintiff to a rheumatologist and neurologist.  Dr. Wert noted "non compliance" in his diagnostic impression.  (R. 256.)  Plaintiff was a "no-show" at her scheduled August 12, 2009 appointment.  (R. 255.)  In January 2010, Plaintiff complained of a cough, pressure in her chest that morning that had resolved, and fatigue.  Dr. Wert diagnosed bronchitis and pleurisy, and prescribed antibiotics.  9R. 259.)

In February 2010, Plaintiff reported to the North Florida Regional Medical Center emergency room complaining of a cough, fever, shortness of breath, and chest pain that started two weeks prior.  She took antibiotics for a week until she felt better but her symptoms returned and were worse.  The review of systems was negative for rashes, pedal edema, or calf pain.  (R. 272.)  Her physical exam was normal, and a chest x-ray was normal.  (R. 273.)  Plaintiff was diagnosed with atypical chest pain and bronchitis and prescribed an antibiotic and cough suppressant.  (R. 277.)

During a June 2010 consultative examination, Plaintiff reported that she left her job as a credit counselor in 1997 when she became pregnant.  She reported being able to take care of her own personal needs, drive, and shop when she feels up to it.  She spends her days caring for her children and doing what she can around the house.  Her children helped with cooking and housekeeping.  (R. 290.)

Plaintiff saw William E. Guy, M.D., on two occasions in July 2010, complaining of left arm pain.  (R. 303-07.)  Plaintiff told Dr. Guy that she did not want to take medication for her lupus because it would only control symptoms and had significant side effects.  (R. 306.)  Dr. Guy prescribed no medication for Plaintiff, per her request. (R. 303-04.)

State agency expert Michele Cooley completed a physical RFC assessment on May 7, 2010, and opined that Plaintiff could perform a wide range of light work.  (R. 281-88.)  State agency expert Dr. Audrey Goodpasture opined on October 14, 2010, that Plaintiff could perform a wide range of medium work.  (R. 329-36.)

### B.  Hearing Testimony

Plaintiff, who was 51 at the time of the hearing, testified that she had been diagnosed with lupus, mitral valve prolapse, thyroid disease, rheumatoid arthritis, and myositis.  (R. 62.)  She has had weight gain in the past but lost 22 pounds in the previous six weeks.  Plaintiff complained of having an extremely bad breakout of lupus symptoms, such as rashes, fevers, and headaches.  (R. 64.)

She lives with her children, ages 11 and 13, and has a driver's license.  She drove herself and her children to the hearing.  (R. 65.)  With regard to care for her two children living at home, Plaintiff testified that they were old enough to do most things for themselves. (R. 70.)  She could make simple meals.  (R. 71.)  Her 13-year-old did most of the laundry, and until recently Plaintiff had a maid and lawn care service.  (R. 75.)  She does a lot of shopping online and goes grocery shopping once every few weeks.  There is very little housework in her current home.  (R. 76.)

Plaintiff testified that she is a high school graduate and her last job was in credit services.  (R. 65.)  She testified that she has not worked since 1997 under the supervision of a doctor telling her not to work any longer.  Her lupus symptoms continued to get worse.  (R. 67.)  Plaintiff reported that her primary symptoms are fatigue, flu-like symptoms, and headaches.  She has been in and out of the hospital for the past two years with pneumonia-like symptoms.  (R. 68.)  She also reported having blood clots related to her lupus.  Plaintiff testified that the only medication that will really help for lupus is prednisone, but it is just a "Band-Aid" with too many side effects.  (R. 69.)  She took it in the very beginning but not anymore.  Diet, rest, and avoiding stress

are ways to live with lupus.  (R. 70.)  Plaintiff testified that she takes an aspirin a day and that she had just been prescribed prednisone again and might take it if her current bout of symptoms did not resolve.  (R. 72.)

Plaintiff testified that she can walk a very short distance before her ankle swells. She could stand about half and hour.  She could lift about 10 pounds.  The year prior she had myositis in one of her arms and shoulders that caused her to not be able to lift anything, but she had not had problems with it in the current year.  (R. 73.)  She could sit for about an hour before she had to stand up.  (R. 74.)

Plaintiff was unrepresented at the hearing, and told the ALJ that it was her understanding that because she was already receiving benefits related to her husband's death, she could not get an attorney to represent her.  (R. 84.)

### C.  ALJ's Decision

The ALJ determined that Plaintiff suffered from the severe impairment of lupus, but that her impairment, alone or in combination, did not meed or medically equal a listed impairment.  The ALJ found that Plaintiff had the RFC to perform a full range of sedentary work, and could perform her past relevant work as a credit reference clerk. Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 39-47.)

## IV.  DISCUSSION

Plaintiff contends the ALJ erred in evaluating Plaintiff's pain complaints.  Plaintiff argues that the ALJ made only a "boilerplate" credibility finding that is not supported by substantial evidence.  For the reasons discussed below, the Commissioner's decision is due to be affirmed because the ALJ properly evaluated Plaintiff's credibility and pain

complaints.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995).  The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."  *See Foote*, 67 F.3d at 1560.  Under that test, evidence of an underlying medical condition must exist.  *Id.*  If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.  *Id.*  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.  *Id*. § 404.1529(c)(1)-(2).  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the

claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.  *Id.* § 404.1529(c)(3).  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.  *Id.* § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Id*. at 1562.  The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir.1991).  The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence.  *Foote*, 67 F.3d at 1562.  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case.  *Id*.

In this case, the ALJ determined that Plaintiff has a medically-determinable

impairment that could reasonably be expected to produce her symptoms, and therefore

the ALJ evaluated the intensity and persistence of Plaintiff's symptoms in determining

how they limit her capacity for work, as reflected in the records and hearing testimony.

*See* 20 C.F.R. § 404.1529(c)(1)-(2).  The ALJ concluded that Plaintiff's complaints were

not credible to the extent they are inconsistent with the RFC.[22]  (R. 43.)  The ALJ went

on to articulate additional support for his credibility findings.

    The ALJ pointed to medical evidence that supports his conclusions regarding

Plaintiff's credibility.  *See* 20 C.F.R. § 404.1529(c)(2).   For example, the ALJ found:

> A review of the record does not support the claimant's allegations for
> disability.  Unfortunately, the evidence is relatively minimal in demonstrating
> any significant limitations or bouts with her lupus.  In fact, her cardiologist,
> Dr. Abdur Rahim, in February 2008 indicated that she did not need to be
> seen unless she was having symptoms.  She has not seen Dr. Rahim since
> 2008.   Additionally, diagnostic tests have all been within normal limits.
> Treatment notes from her primary care physician, Dr. Douglas Wert,
> demonstrate essentially normal physical examinations.   Doppler
> examinations and x-rays have been normal, and cardiac diagnostics have
> been normal.  At the hearing, she complained that she experiences swelling;
> however, physical examinations have not documented any edema or deficits
> in the lower or upper extremities.

(R. 45.)  Plaintiff has had minimal treatment for her lupus and has been non-compliant

in attending appointments and taking recommended medications.  (R. 252, 268, 255-

---

[22] In support of the argument that the ALJ applied the incorrect legal standard, Plaintiff relies on non-binding authority from the Seventh Circuit.  (Doc. 17) (citing *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012)).  The instant case is factually distinguishable from *Bjornson* because here, the ALJ appropriately considered the factors set forth in 20 C.F.R. § 404.1529, and made a credibility finding that is supported by substantial evidence.  Furthermore, other District Courts in the Eleventh Circuit have rejected the same reliance on *Bjornson.  Decook v. Colvin*, 2014 WL 1249325, at *10, n. 10 (M.D. Fla. Mar. 26, 2014); *Birchfield v. Colvin*, 2014 WL 794320, at *9, n. 10 (M.D. Fla. Feb. 26, 2014); *Taylor ex rel. v. K.T. v. Astrue,* 2012 WL 3052916, at *5 (S.D. Ala. July 26, 2012) ("Seventh Circuit law would not take priority, in this Court, over established Eleventh Circuit precedent").

59, 272, 303-07); *see Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 265 (11th Cir.

2009) (citing *Watson v. Heckler,* 738 F. 2d 1169, 1173 (11th Cir. 1984) for the "finding

that a claimant's failure to seek medical treatment is relevant in assessing credibility");

SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible

if the level or frequency of treatment is inconsistent with the level of complaints, or if the

medical reports or records show that the individual is not following the treatment as

prescribed and there are no good reasons for this failure.").

The ALJ also considered Plaintiff's allegations in the context of her daily

activities.  20 C.F.R. § 404.1529(c)(3)(i).  The ALJ found:

> The claimant's demeanor regarding her activities of daily living was not fully
> credible.  She indicated that she relies heavily on her children to take care
> of themselves and be self-sufficient when she is experiencing symptoms of
> her lupus.    However, during the consultative examination with Dr.
> Humphreys, she reported she had no difficulties with performing her activities
> of daily living or caring for her children.  She advised that she takes care of
> her personal needs, her children's needs, drives, and shops.  She also
> reported that she spends her days caring for her children.  These activities
> of daily living are inconsistent with her alleged disability and are a proper
> factor for the undersigned's consideration.

(R. 45); (R. 70-76, 290.)  As the ALJ appropriately considered, Plaintiff has been a

homemaker since 1997 and during the relevant time period cared for her minor

children.   Her description to Dr. Humphreys (R. 290) was inconsistent with her

testimony at the administrative hearing (R. 70-76) regarding her activities of daily living,

and therefore the ALJ took this into account in evaluating the credibility of her

allegations of disabling lupus symptoms.  20 C.F.R. § 404.1529(c)(3)(i).

Finally, Plaintiff also argues that the ALJ's credibility finding violates *Swindle v.*

*Sullivan*, 914 F. 2d 222 (11ᵗʰ Cir. 1990).  In *Swindle*, the ALJ determined that the

claimant's testimony regarding persistent pain and dizziness was only partially credible

because she had full range of motion in her joints, no synovitis, and intact motor

function.  *Swindle*, 914 F. 2d at 226.  The Eleventh Circuit held that the ALJ's finding

was not supported by substantial evidence because the medical evidence, "[v]iewed in

its entirety," showed that the claimant's systemic lupus and related rheumatic diseases

were severe enough to give rise to the disabling symptoms she described.  *Id.* at 225.

The claimant in *Swindle* had repeated hospitalizations for her lupus symptoms; was

consistently treated with medications (including prednisone) for her pain, itching and

other symptoms; had numbness in her left leg and foot confirmed by diagnostic testing;

and had recurring rash, fatigue, nausea, hair loss, and arthralgia.  *Id.* at 224.  The

medical evidence in *Swindle* is clearly distinguishable from the medical evidence in

Plaintiff's case, which reflects limited treatment, one hospitalization for chest pain and

bronchitis, non-compliance with appointments and medication, and normal diagnostic

and examination findings.  The ALJ in Plaintiff's case, unlike the ALJ in *Swindle*, also

considered multiple factors in assessing Plaintiff's credibility.  Therefore, Plaintiff's

argument that *Swindle* commands reversal in this case is without merit.

In conclusion, Plaintiff points to nothing specific in the medical records that

undermines the ALJ's conclusion that her complaints regarding the intensity and

persistence of her lupus symptoms were not fully credible in view of her course of

medical treatment, non-compliance, and her daily activities.   On this record, the Court

concludes that the ALJ properly articulated the credibility finding, and the ALJ's finding

is supported by substantial evidence.  *Foote*, 67 F.3d at 1562.

## V.  <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 20th day of May 2014.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to
the proposed findings and recommendations within 14 days after being served with a
copy of this report and recommendation.  A party may respond to another party's
objections within 14 days after being served with a copy thereof.  Failure to file specific
objections limits the scope of review of proposed factual findings and
recommendations.**